UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| EVA BETANCOURT, | § | |
| --- | --- | --- |
| | § | |
| Plaintiff, | § | |
| v. | § | CIVIL ACTION NO. |
| | § | |
| CITY OF DILLEY, | § | SA-10-CV-0863 OG (NN) |
| | § | |
| Defendant. | § | |

## REPORT AND RECOMMENDATION

This report and recommendation addresses the pending motion for summary judgment.[1] I have authority to enter this report and recommendation under 28 U.S.C. § 636(b) and the district court's order referring all pretrial matters to me for disposition by order or to aid the district court by recommendation where my authority as a magistrate judge is statutorily constrained.[2] After considering the applicable pleadings and the summary-judgment record, I recommend granting the motion.

**Nature of the case**. Plaintiff Eva Betancourt once worked for the City of Dilley (the City) as a patrol officer. Betancourt's employment was brief—she resigned after 97 days. Betancourt sued the City and alleged that the City discriminated against her on the basis of gender. She further alleged that police chief Johnny Vasquez sexually

---

[1]Docket entry # 13.

[2]Docket entry # 14.

harassed her and retaliated against her after she complained about gender discrimination. Betancourt sued the City under 42 U.S.C. § 2000e, alleging constructive discharge and seeking lost wages, damages and attorney fees.[3] The City moved for summary judgment on all claims. Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[4]

**Gender discrimination and retaliation**. To prevail on her gender discrimination and retaliation claims, Betancourt must prove she suffered a legally actionable adverse employment action.[5] Without this showing, Betancourt cannot make a prima facie case of gender discrimination or retaliation.[6] Betancourt relies on constructive discharge as her adverse employment action.

"To prove constructive discharge, a plaintiff must establish that working conditions were so intolerable that a reasonable employee would feel compelled to resign."[7] "Constructive discharge requires a greater degree of harassment than that

---

[3]Docket entry # 1.

[4]Fed. R. Civ. P. 56(a).

[5]*McCoy v. City of Shreveport*, 492 F.3d 551, 557 (5th Cir. 2007).

[6]*Id*.

[7]*Faruki v. Parsons S.I.P.*, 123 F.3d 315, 319 (5th Cir. 1997).

2

required by a hostile environment claim."[8] In determining whether a reasonable employee would feel compelled to resign, the court considers such factors as:

> (1) demotion;
>
> (2) reduction in salary;
>
> (3) reduction in job responsibilities;
>
> (4) reassignment to menial or degrading work;
>
> (5) badgering, harassment, or humiliation by the employer calculated to encourage the employee's resignation; or
>
> (6) offers of early retirement that would make the employee worse off whether the offer were accepted or not.[9]

The facts of this case do not implicate the last factor. Consideration of the other factors indicates that what Betancourt complains about does not rise to the level of constructive discharge.

Betancourt testified about the basis of her gender discrimination and retaliation claims during her deposition. Her complaints, as supported by the summary judgment record, are listed below:

> (1) Vasquez called her on her personal cell phone near the end of her shift and asked her to look for illegal immigrants behind his home. Vasquez

---

[8] *Brown v. Kinney Shoe Corp.*, 237 F.3d 556, 566 (5th Cir. 2001).

[9] *Stover v. Hattiesburg Pub. Sch. Dist.*, 549 F.3d 985, 991 (5th Cir. 2008).

3

told her that his wife was out of town.[10] Betancourt believed Vasquez wanted to see her alone; she asked her brother who was also a patrol officer to accompany her.

(2) Vasquez hired her to work Monday through Friday so as to accommodate her parenting responsibilities, but he later required Betancourt to work weekends.[11]

(3) Vasquez assigned Betancourt the duty to investigate cases assigned to male officers but did not change her title to investigator.[12]

(4) Betancourt was not permitted to attend training during her shifts and attended training on her off time and at her own expense.[13]

(5) Vasquez did not permit Betancourt to see a doctor during her shift, requiring her to wait until her days off. Betancourt alleged that Vasquez permitted a male officer to take time off after drinking.[14]

(6) Vasquez was angry when she spoke to male officers or had lunch with male officers. Vasquez told her the men wanted to get into her pants.[15]

(7) Vasquez did not permit her to eat for an entire shift during a drivers' license check.[16]

(8) Vasquez called her away from her lunch with state intelligence officers

---

[10]Docket entry # 13, ex. 1, pp. 51-56, 58-59 & 68-69; docket entry # 17, ex. A, pp. 1-2.

[11]Docket entry # 13, ex. 1, pp. 32-34 & 76; docket entry # 17, ex. A, pp. 1-2.

[12]Docket entry # 13, ex. 1, pp. 37-38, 40-41 & 80; docket entry # 17, ex. A, pp. 2-3.

[13]Docket entry # 13, ex. 1, pp. 35 & 70-71.

[14]Docket entry # 13, ex. 1, pp. 80-82; docket entry # 17, ex. A, p. 3.

[15]Docket entry # 13, ex. 1, pp. 50, 60 & 72; docket entry # 17, ex. A, pp. 3.-5.

[16]Docket entry # 13, ex. 1, 72-74; ; docket entry # 17, ex. A, p. 3.

to show her semi-tractor marked with World Wrestling Entertainment.[17]

(9) Vasquez deleted hours from her time card when she did not ask beforehand to work overtime.[18]

(10) Upon her resignation, Vasquez indicated on her F-5 report of separation that Betancourt failed to complete the agency probation period, rather than reporting that she resigned in good standing to pursue L.E. career or resigned through mutual agreement and eligible to reapply.[19]

Betancourt maintained that these incidents show that Vasquez had a sexual interest in her and that Vasquez retaliated against her after she asked her brother to go to Vasquez's home to look for illegal aliens.

The court must view the evidence in the light most favorable to Betancourt. Viewed true, and under Fifth Circuit precedent, the conduct Betancourt complains about was not so intolerable that a reasonable person would be compelled to resign. For example, in considering a female police officer's race and gender discrimination claims, the Fifth Circuit was "satisfied that a reasonable employee in [the plaintiff's] position would not have felt compelled to resign" where the plaintiff: (1) was not demoted, suffered no reduction in salary, and was paid in full for the entirety of her [medical] leave; (2) was relieved of her job responsibilities at her own request, without

---

[17] Docket entry # 17, ex. A, pp. 4.

[18] Docket entry # 13, ex. 1, pp. 77-78, 91 & 93; docket entry # 17, ex. A, p. 5.

[19] Docket entry # 13, ex. 1, pp. 78-79 & 119-20; docket entry # 17, ex. A, pp. 5-6.

an indication that she would not be reinstated to her previous position when cleared medically to return to work; (3) was not reassigned to menial or degrading work, and she never received an offer of early retirement.[20] In contrast, no evidence indicates Betancourt was demoted, relieved of job responsibilities, or reassigned to menial or degrading work, or that Betancourt suffered a reduction in salary.

In considering a race discrimination claim in which the plaintiff complained that he was repeatedly denied promotions and transfer opportunities, and that his transfer to different store was a demotion because the store continually lost money, the Fifth Circuit determined that a reasonable employee would not have felt compelled to resign, particularly considering that the employee was pursuing an EEOC remedy.[21] In contrast, no evidence indicates Betancourt was denied promotion and transfer opportunities.

In a race and gender discrimination case, the Fifth Circuit determined that the plaintiff's evidence did not amount to conditions so intolerable that a reasonable employee would feel compelled to resign where the plaintiff complained that: (1) she was not provided the same career development opportunities, (2) her complaints of discrimination went uninvestigated, (3) she was not permitted to take comp time, (4)

---

[20]*McCoy*, 492 F.3d 558.

[21]*Brown*, 237 F.3d at 566.

6

her supervisor exhibited anger toward her, and (5) she was excluded from prestigious retreats.[22] The court explained that at best, the evidence showed the plaintiff was disgruntled that a high-level school administrator received greater benefits than she received and that she encountered difficulty in dealing with her supervisor.[23] In contrast, no evidence indicates Betancourt was denied the same career development opportunities as men, or that complaints of discrimination went uninvestigated, or that she was denied comp time or excluded from department activities. At most, the evidence shows that Vasquez got mad when Betancourt associated with male police officers.

In a case alleging gender discrimination, the Fifth Circuit explained that no reasonable person would have felt compelled to resign where the plaintiff complained about the following: (1) the defendant-employer rotated her out of a principal investigator position, reducing her job responsibilities; (2) the plaintiff's supervisor told her that her performance evaluations would improve if her attitude improved; (3) another supervisor suggested she quit if she did not like management's rules; (4) the defendant-employer required her to interview a candidate the plaintiff believed would replace her; and (5) the plaintiff "was not demoted, actually received salary increases…,

---

[22]*Stover*, 549 F.3d at 991-92.

[23]*Stover*, 549 F.3d at 991-92.

was not reassigned to menial work…, and was not offered early retirement or less favorable employment terms."[24] In contrast, no evidence indicates Betancourt lost job responsibilities, Vasquez threatened her with poor performance evaluations, someone suggested she quit, or that Betancourt was required to interview a replacement.

Even if Betancourt's evidence is true, the complained-about conduct does not rise to the level required for constructive discharge. She did not complain about a demotion; a reduction in salary; a reduction in job responsibilities; reassignment to menial or degrading work; or badgering, harassment, or humiliation calculated to encourage resignation. The City is entitled to summary judgment on Betancourt's gender discrimination and retaliation claims.

**Sexual harassment**.  To prevail on her sexual harassment claim, Betancourt must prove that the harassment complained about affected a term, condition or privilege of employment.[25] That is, she must prove that the sexual harassment was sufficiently severe or pervasive so as to alter the conditions of employment and create an abusive working environment.[26] In determining whether the alleged harassment was sufficiently severe or pervasive, the court must consider the totality of the

---

[24]*Browning v. Sw. Research Inst.*, No. 07-50434, 2008 WL 3009894, at * 8 (5th Cir. Aug. 8, 2008).

[25]*Watts v. Kroger Co.*, 170 F.3d 505, 509 (5th Cir. 1999).

[26]*Watts*, 170 F.3d at 509.

8

circumstances.[27] The court must consider factors such as "the frequency of the discriminatory conduct; its severity; whether it [was] physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interfere[d] with an employee's work performance."[28] "To be actionable, the challenged conduct must be both objectively offensive, meaning that a reasonable person would find it hostile and abusive, and subjectively offensive, meaning that the victim perceived it to be so."[29]

Under Fifth Circuit precedent, what Betancourt complains about was not sufficiently severe or pervasive so as to alter the conditions of Betancourt's employment or create an abusive working environment. For example, in considering a female plaintiff's allegations that her male supervisor told her that they should be "sweet" to each other and that he loved her approximately six times over the course of about one month, the Fifth Circuit explained that the supervisor's occasional statements "did not create a hostile work environment because they were not severe, physically threatening, or humiliating; at most, they were unwanted and offensive."[30] The Fifth Circuit stated

---

[27] *Stewart v. Miss. Transp. Comm'n*, 586 F.3d 321, 330 (5th Cir. 2009).

[28] *Harvill v. Westward Communications*, 433 F.3d 428, 434 (5th Cir. 2005) (quoting *Harris v. Forklift Sys.*, 510 U.S. 17, 23 (1993)).

[29] *Shepherd v. Comptroller of Pub. Accounts*, 168 F.3d 871, 874 (5th Cir. 1999).

[30] *Stewart*, 586 F.3d at 330-31.

9

that such conduct would not "interfere unreasonably with a reasonable person's work performance or destroy her opportunity to succeed in the workplace."[31] In contrast, no evidence indicates Vasquez made suggestive comments to Betancourt.

As another example, the Fifth Circuit determined the plaintiff failed to raise a fact question about whether the complained about harassment affected a term, condition, or privilege of employment where the female plaintiff complained about the following: (1) a co-worker once stood in front of her desk and remarked that her elbows were the same color as her nipples; (2) the co-worker told her that she had big thighs while simulating looking under her dress; (3) the co-worker stood over her desk on several occasions and attempted to look down her clothing; (4) the co-worker touched her arm on several occasions, rubbing one of his hands from her shoulder down to her wrist while standing beside her; (5) when she twice arrived late for meetings, the co-worker patted his lap and said "here's your seat;" (6) the co-worker never propositioned the plaintiff, never asked her out on a date, and never suggested that he would like to sleep with her.[32] In contrast, no evidence indicates Vasquez made any sexual gestures or comments to Betancourt.

Betancourt complained only that she believed Vasquez asked her to check for

---

[31] *Stewart*, 586 F.3d at 330-31.

[32] *Shepherd*, 168 F.3d at 872.

illegal aliens and told her his wife was away because he was interested in her, and that Vasquez told her that male officers wanted to get into her pants. This conduct is insufficient under Fifth Circuit precedent to constitute actionable sexual harassment. The City is entitled to summary judgment on Betancourt's sexual harassment claim.

**Recommendation**. Because under Fifth Circuit precedent Betancourt complains about conduct that falls short of constructive discharge and sexual harassment, I recommend granting the City's motion (docket entry # 13) and entering summary judgment in favor of the City.

**Instructions for Service and Notice of Right to Object/Appeal**. The United States District Clerk shall serve a copy of this report and recommendation on all parties by either (1) electronic transmittal to all parties represented by attorneys registered as a "filing user" with the clerk of court, or (2) by mailing a copy to those not registered by certified mail, return receipt requested. Written objections to this report and recommendation must be filed within 14 days after being served with a copy of same, unless this time period is modified by the district court.[33] Such party shall file the objections with the clerk of the court, and serve the objections on all other parties. A party filing objections must specifically identify those findings, conclusions or recommendations to which objections are being made and the basis for such objections;

---

[33] 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

the district court need not consider frivolous, conclusive or general objections. A party's failure to file written objections to the proposed findings, conclusions and recommendations contained in this report shall bar the party from a *de novo* determination by the district court.[34] Additionally, failure to file timely written objections to the proposed findings, conclusions and recommendations contained in this report and recommendation shall bar the aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.[35]

**SIGNED** on October 17, 2011.

*Nancy Stein Nowak*
NANCY STEIN NOWAK
UNITED STATES MAGISTRATE JUDGE

---

[34]*Thomas v. Arn*, 474 U.S. 140, 149-52 (1985); *Acuña v. Brown & Root*, 200 F.3d 335, 340 (5th Cir. 2000).

[35]*Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).